Filed 6/30/15  In the Matter of the Saul Brandman Foundation CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In the Matter of the Saul Brandman Foundation. | B252343 |
| | (Los Angeles County Super. Ct. No. BP136221) |
| JOYCE BRANDMAN, | |
| Petitioner and Appellant, | |
| v. | |
| DOMINO REALTY MANAGEMENT, INC., et al., | |
| Objectors and Respondents. | |

APPEAL from judgment of dismissal by the Los Angeles Superior Court, Michael I. Levanas, Judge.  Reversed with directions.

Glaser Weil Fink Howard Avchen & Shapiro, Patricia L. Glaser, Pete Slevin for Petitioner and Appellant.

Loeb & Loeb, Andrew S. Clare, Nicholas J. Van Brunt for Objectors and Respondents.

————————————

A public charity foundation is the beneficiary of a trust that embodies its settlor's estate plan. The trust instrument entitles the trust to the deceased settlor's interests in a score of entities that own valuable parcels of residential and commercial real estate, in which the decedent's former business partner and others also own interests. Under the trust instrument, the trust is to receive the decedent's interests in these assets, then to distribute the residue (after its now-completed payments of gifts and expenses) to the foundation for its charitable disposition.

The foundation's President is the decedent's surviving spouse and a member of its three-person board of directors. The trustees of the trust are three individuals (not including the surviving spouse), two of whom sit also on the foundation's three-member board.

The foundation's President petitions the probate court for relief to obtain for the foundation the benefits of the decedent's estate plan. She alleges that the decedent's former partner, the current manager of the real estate business, controls the limited liability corporate and limited partnership entities whose interests comprise the trust's assets, and the former partner has refused to consent to transfer of the trust's interests in those entities to the trust, for distribution to the foundation—thereby depriving the foundation of the bulk of the assets to which it is entitled.

The foundation's President petitions the probate court for relief, contending that circumstances unforeseen and unintended by the decedent have resulted in the creation of a semi-permanent trust, with no purpose other than to maintain the status quo for the benefit of the properties' current manager and the trustees for whom it is generating substantial fees.

We conclude below that the probate court erred in granting judgment on the pleadings in favor of the trustees and the manager of the properties, without leave to amend, and dismissing the petition.

# Background[1]

## The Petition

On August 15, 2012, petitioner Joyce Brandman (Ms. Brandman) filed a verified Petition seeking relief under Probate Code sections 850 and 17200. The following facts are among those alleged:

1. Ms. Brandman is President and a member of the board of directors of The Saul Brandman Foundation (the Foundation), a California non-profit public benefit corporation established by Ms. Brandman's husband, Saul Brandman (Brandman).

2. The Foundation is the residuary beneficiary of The Saul Brandman Revocable Trust, as amended (the Trust), of which Brandman was the settlor, trustee, and sole beneficiary during his life. The Trust became irrevocable upon Brandman's death on May 27, 2008. The trustees of the Trust are Stephen Massman, Barry Goldfarb, and Kenneth Goldman. Massman and Goldfarb are also members of the Foundation's three-member board of directors.

3. During his life Brandman and his business partner, Steven Gordon, founded Domino Realty Management, Inc. and subsidiary entities (Domino), to purchase, improve, manage, and hold residential and commercial properties. Title to the properties themselves is held by various single-purpose entities (limited liability companies and limited partnerships) in which Gordon, Brandman, and (in some cases) others owned interests, that are, since Brandman's death, managed by Domino and Steven Gordon (individually or as trustee of his family trust),[2] (collectively sometimes the Domino parties).

---

[1] In accordance with the standards that govern our review of judgments on the pleadings, we accept, for purposes of this appeal only, that all material facts properly pleaded in the petition are true. (*Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1126; *Kempton v. City of Los Angeles* (2008) 165 Cal.App.4th 1344, 1347 & fn. 1.)

[2] Because the pleaded facts do not fully distinguish between entities among the Brandman Domino Assets that are owned or operated by Domino, and that are owned or

4. During his lifetime Brandman designated assets from his estate (alleged to exceed $200 million) that would be owned by or transferred to the Trust, to then be passed through the Trust to the Foundation after the Trust's satisfaction of specified debts and gifts. Among the assets to be transferred were Brandman's interests in specified real estate entities in which Domino or Gordon (and in some cases others) also had interests (the Brandman Domino Assets), and that are operated by the Domino parties. The Brandman Domino Assets are alleged to have a current value exceeding $100 million. The Brandman Domino Assets include at least twenty-one specified property-holding entities in which Brandman's interests are passive, non-managerial interests. At the time of his death, Brandman held title to the Brandman Domino Assets as trustee of the Trust.

5. The Trust provides that the Brandman Domino Assets were to be transferred to the Foundation after the Trust's satisfaction of specified gifts, taxes, and administrative expenses—all of which obligations the Trust had fully satisfied some years before the Petition was filed.

6. Although the Trust residue is ready for distribution to the Foundation, the Domino parties have refused to approve the trustee's assignment of the Brandman Domino Assets to the Foundation. The Domino parties' refusal to permit transfer of the Brandman Domino Assets to the Foundation is based on Gordon's claim of authority under the governing agreements for some or all of the entities that comprise the Brandman Domino Assets, to approve or reject the assignment. The Domino parties' refusal to approve the trustee's assignment of the Brandman Domino Assets to the Foundation has prevented the Trust from completing the required distribution of its residue (the Brandman Domino Assets) to the Foundation, and has prevented the Trust from winding up its operations.

7. The Trust's failure to assign the Brandman Domino Assets to the Foundation has in turn delayed the Foundation's receipt of a major portion of its intended funding, limiting its ability to benefit the charitable organizations and causes that it would

_____

operated by Gordon or his family trust, this opinion uses the term "Domino parties" to refer collectively to any of those circumstances.

4

otherwise support; which has frustrated implementation of Brandman's testamentary plan; and which has resulted in dissipation of assets through unnecessary fees and expenses of continuing Trust operations for no purpose, to the detriment of the Foundation, the Trust's sole remaining beneficiary.

8. The Trust and the Foundation have fully performed all material conditions precedent to the obligations of the Domino parties and all other parties to transfer the Brandman Domino Assets to the Foundation for its distribution of those assets to the Foundation. The trustees are ready to distribute the residue of the Trust estate, but have been prevented from doing so by the refusal of the Domino parties to permit the Brandman Domino Assets' transfer.

9. Many of the governing agreements for entities within the Brandman Domino Assets contain provisions permitting the entities' managing member or managing partner to prevent the transfer of another member or partner's interest in the entity "except with the prior written approval of all the Managers, which approval may be given or withheld in the sole discretion of the Managers (whether reasonable or not)." These provisions were intended by Brandman and Gordon to prevent a member from transferring an interest to a stranger to the entity during the member's lifetime; they were not intended or contemplated by the parties to be used to prevent funding of the Foundation after Brandman's death.

10. Many of the operating agreements for entities within the Brandman Domino Assets contain provisions that upon a member's death, "such Member shall cease to have the right to appoint a Manager and the number of Managers shall be reduced accordingly." Pursuant to those provisions, upon Brandman's death Gordon or the Domino parties became the sole remaining manager of many of the Brandman Domino Assets, and Gordon claims the power to veto any transfer of the Brandman Domino Assets to the Foundation.

11. Gordon holds a minority interest in several of the Brandman Domino Assets entities. Although the operating agreement for only one of the Brandman Domino Assets contains a "right of first refusal on sale/exchange," Gordon's refusal to transfer the

5

Brandman Domino Assets has had the effect of giving the Domino parties an unauthorized and unintended right of first refusal over all the Brandman Domino Asset entities.

The Petition concludes that by virtue of these and other facts Gordon and the Domino parties owe duties of good faith and fair dealing to the trust and the Foundation, requiring him to consent to transfer of the Brandman Domino Assets to the Trust.

**Responses and Supplements to the Petition**

The Domino parties filed a response and objections to the Petition. In it they admit many of the Petition's factual allegations while denying most of its legal conclusions. They allege as affirmative defenses (1) that Ms. Brandman lacks standing to assert the Trust's interests against the Domino parties; (2) that the Petition states no claim for relief under Probate Code section 850; (3) that the Petition states no claim for relief under Probate Code section 17200; and (4) other defenses such as uncertainty, statute of limitations, laches, waiver, estoppel, and consent. Specifically, the Domino parties' response admits that they are withholding the consent for transfer of the Brandman Domino Assets (the Trust's interests in the Brandman Domino Asset entities) to the Foundation, based their rights under the various entities' governing agreements.

The trustees of the Trust (Massman, Goldman, and Goldfarb) also answered the Petition. Among other facts, they allege that the Foundation's board of directors (Massman, Goldfarb, and Ms. Brandman) did not authorize Ms. Brandman to file the Petition.

Ms. Brandman filed three supplements to her Petition, apparently in response to probate notes of the court's staff attorneys. A November 8, 2012 supplement, alleges (in part) that she had filed the Petition on her own behalf as an officer and member of the Foundation's board of directors, rather than on behalf of the Foundation, because the majority of the Foundation's board of directors (Massman and Goldfarb) are also a majority of the Trust's trustees, who, as paid trustees of the Trust with an incentive to prolong its existence (as well as Massman's status as Gordon's current business partner),

6

have irreconcilable conflicts of interest with their fiduciary duties to the Foundation as members of its board of directors.

A response by respondents to the November 8, 2012 supplement, attached a November 1, 2012 demand by Massman and Goldfarb, as two of the three Foundation directors, that Ms. Brandman cease acting on the Foundation's behalf and that she dismiss the Petition. In another supplemental response the trustees, Massman, Goldfarb, and Goldman, allege (1) that Ms. Brandman is not an "interested party" under the Probate Code, because Brandman had entrusted the Foundation's board of directors and the trustees of the Trust (not Ms. Brandman) with supervision and management of his assets after his death; (2) that the trustees had attempted to transfer the Brandman Domino Assets to the Foundation, but were thwarted by Gordon's refusal to consent to the transfers; and (3) that Ms. Brandman had refused to permit them to negotiate for sale of the Brandman Domino Assets by the Trust to Gordon or the Domino parties, the proceeds of which they would then transfer to the Foundation.

Ms. Brandman filed a second supplement to the Petition on January 4, 2013, in support of her contention that the probate court has jurisdiction over the parties' dispute, under section 850, under section 17200, and under the court's inherent equitable powers.[3] The second supplement alleges the court's authority to order transfer or sale of the Brandman Domino Assets in order to give effect to Brandman's estate plan; the court's power to order accountings of the Trust and Brandman Domino Assets in order to aid the Foundation in planning its future charitable endeavors; and the court's authority to overcome irreconcilable conflicts of interest suffered by at least two of the trustees and the same two directors of the Foundation.[4] The supplemental Petition alleges specifically

---

[3] These and subsequent statutory references in this opinion are to the Probate Code, unless otherwise specified.

[4] Ms. Brandman's verification supporting the second supplement avers that Massman is Gordon's current business partner, that Gordon is the principal of Domino, and that Massman is also a partner in one or more businesses with one or both of the other trustees of the Trust. The supplement attaches a copy of the June 2010 minutes of

7

that the trustees' conflicts of interest are irreconcilable because their fiduciary duties to the Trust and the Foundation require that they facilitate the Trust's transfer of the Brandman Domino Assets to the Foundation and that they maximize the Brandman Domino Assets' purchase price; but Massman's status as Gordon's business partner requires him to minimize the assets' purchase price for Gordon and Domino; and the financial incentives of all three of the trustees is to delay the Trust's winding up as long as possible.[5]

The January 4, 2013 second supplement to the Petition argues that Ms. Brandman is an "interested person" under sections 850 and 17200, because she is the only member of the Foundation's board of directors unaffected by conflicts of interest; and that even if only one of the board's members had conflicting interests, the board still would be unable to act for the Foundation's protection. When conflicts of interest thwart an estate plan, the supplement argues, the probate court has both statutory and inherent power to appoint and remove the Foundation's directors, to remove trustees and appoint trustees ad litem for the Trust, and to compel an accounting of trust assets. The January 4, 2013 supplement, also alleges that Domino had so far refused to respond to discovery requests for information and documents relevant to the issues relating to the court's powers and Ms. Brandman's standing, including its refusal to provide copies of the Brandman Domino Asset entities' governing agreements, which are alleged to empower Gordon or the Domino parties to refuse to consent to the assets' transfer.

In a May 9, 2013 third supplement to the Petition, Ms. Brandman alleged that it is the duty of Goldfarb and Goldman (the two trustees who do not admit their disability to

---

the Foundation's board of directors, which report Massman's statement he could not participate in negotiations concerning the Trust's acquisition of the Brandman Domino Assets "due to his business relationship and investments with Gordon."

[5] Ms. Brandman's verification avers that she had previously requested accountings both of the Brandman Domino Assets and the Trust. She avers also that she had previously asked the trustees of the Trust to petition for an accounting of the Brandman Domino Assets, and to obtain their transfer to the Trust—a request that the trustees refused.

act due to conflicts of interest) to have the Trust bring this action against the Domino parties in order to ensure that the Brandman Domino Assets pass to the Foundation.[6] But although over five years had by then passed since Brandman's death, the transfer of the Brandman Domino Assets to the Trust had been blocked by the Domino parties, and the Foundation has received only a fraction of Brandman's intended funding.[7]

Ms. Brandman argued that the Foundation is deadlocked as a result of Massman's admitted conflict of interest and resulting unwillingness to dispute the Domino parties' control over the Brandman Domino Assets, leaving the two remaining board members deadlocked on the issue of the Foundation's efforts to obtain the Brandman Domino Assets, or to force the trustees to do so.[8] The court therefore has the power to order the Brandman Domino Assets transferred or sold; to remove trustees and to appoint a trustee or trustees ad litem when conflicts thwart the estate plan; and to order an accounting of Trust and Brandman Domino Assets.

**The Motion for Judgment on the Pleadings**

Domino and Gordon moved for judgment on the pleadings, and to dismiss the Petition, on a number of grounds: (1) the Petition does not state a claim under section

---

[6] In her verification supporting her third supplement to the Petition, Ms. Brandman avers that she had previously requested from the trustees information and accountings concerning the Brandman Domino Assets and Brandman's interest in Domino, as well transfer to the Foundation of other funds purportedly held by the Trust. She also avers that she had asked the trustees to obtain an accounting of the Brandman Domino Assets and their transfer to the Trust.

The trustees' answer to the supplement alleges (among other things) that Goldman and Goldfarb are not Gordon's current business partners, but that Goldman was the draftsman for Brandman's testamentary estate plan.

[7] The Trust apparently has received some profits from the Domino parties' operation of the entities comprising the Brandman Domino Assets, some portion of which the Trust has distributed to the Foundation (although it may be disputed whether appropriate accountings have been provided). It is transfer and distribution of Brandman Domino Assets themselves, not merely their proceeds, that Ms. Brandman seeks.

[8] Ms. Brandman argues also that Goldfarb, too, had a conflict of interest, leaving only Ms. Brandman as the sole unimpaired Foundation board member.

9

17200; (2) the Petition does not state a claim under section 850; (3) the probate court does not have exclusive or concurrent jurisdiction over the Petition's claims; (4) even if the probate court had jurisdiction over the Petition's claims, they should be determined in a civil action; and (5) Ms. Brandman lacks standing to assert claims on behalf of the Foundation. The parties (including the trustees) participated in extensive briefing and argument on the motion's merits. Shortly before the hearing on the motion, Ms. Brandman lodged a letter from the Supervising Deputy Attorney General on behalf of Attorney General Kamala D. Harris, stating that the trustees of a charitable corporation, as well as the Attorney General, have jurisdiction to petition for relief under *Holt v. College of Osteopathic Physicians and Surgeons* (1964) 61 Cal.2d 750; and that due to staffing and budget considerations, the Attorney General's office typically does not file probate court petitions where—as in this case—there is an interested party with the motivation and means to protect charitable bequests.

The trustees did not join in the Domino parties' motion for judgment on the pleadings, or the request that the dismissal be without leave to amend.[9]

**The Trial Court's Ruling**

The trial court presented a detailed oral tentative ruling (the transcript of which is 15 pages) granting the motion for judgment on the pleadings, without leave to amend, ruling that the Petition failed to allege facts necessary to bring the claims within the jurisdiction of the probate court under either section 850 or section 17200.

Following the court's recitation of its tentative ruling, the petitioner argued primarily that if the Petition is deficient in the respects identified by the court's tentative ruling, she should be given an opportunity to amend. Although the petitioner had filed supplements to the Petition, the court's tentative ruling was its first ruling concerning the

---

[9] When the motion for judgment on the pleadings was heard on July 26, 2013, an often-postponed motion to enforce Ms. Brandman's unanswered requests for discovery from the Domino parties—much of it (including copies of the agreements governing the Brandman Domino Asset entities) claimed to be relevant to issues contested by the motion for judgment—remained unheard.

10

allegations' adequacy and Ms. Brandman's standing to assert them, and the first request for leave to amend the Petition to satisfy the identified deficiencies.

The Domino parties urged the court to stand by its tentative denial of leave to amend, arguing that Ms. Brandman had ample indications that the Petition was deficient and required amendment, to seek instructions to or removal of the trustees, and to seek action by the trustees for relief against the Domino parties (all of which points were disputed by the petitioner). The Domino parties also suggested that even after the Petition's dismissal with prejudice, Ms. Brandman could still petition for the trustees' removal, and any trustees then appointed by the court could still sue the Domino parties for breach of the agreements governing their obligations to the Trust.

After hearing argument, the court adopted its tentative ruling in its entirety. It granted the motion for judgment on the pleadings without leave to amend, and dismissed the Petition with prejudice. The ruling made no mention of the pending discovery motion.

The court ruled that the Petition does not state facts sufficient to constitute a claim under section 17200 (subds. (b)(5), (b)(6), (b)(7), (b)(10), (b)(12), (b)(13) or (b)(15)), on any of the grounds urged by Ms. Brandman. With respect to these issues the court concluded primarily that Ms. Brandman's claims relate to the contractual relationships that govern the various Brandman Domino Asset entities managed by the Domino parties, rather than to the Trust's internal affairs, which is the appropriate subject of a section 17200 petition.

The court ruled that the Foundation's claim of property that is possessed by and under the control of the Domino parties does not state facts sufficient to constitute a claim under section 850, subdivisions (a)(3)(A), or (a)(3)(B). The Foundation claims an interest in the Brandman Domino Assets to which the Trust is entitled, but are possessed by the Domino parties; but under section 850, subdivision (a)(3)(A), it is the trust, not the trust beneficiary, that must have the contested property interest. The court also found that the allegation by Ms. Brandman's second supplement, that the Brandman Domino Assets are possessed and controlled by the Domino parties, contradicted the Petition's allegation

11

that title is held by the trustees rather than the Domino parties; on that ground the court disregarded the supplement. And the court ruled that even if it were to accept the supplement's conflicting allegation that the Brandman Domino Assets are possessed by the Trust rather than the Domino parties, section 850 nevertheless would not apply, because Ms. Brandman's claim would then have nothing to do with the Domino parties, the parties seeking judgment.

The court therefore ruled that the probate court does not have exclusive jurisdiction under section 17000, subdivision (a), because the Petition does not relate to the Trust's internal affairs; and it does not have concurrent jurisdiction because the proceeding was brought to determine the contractual relationships governing the Brandman Domino Asset entities, rather than the existence of a trust. Ms. Brandman's Petition is brought on behalf of a Trust beneficiary (the Foundation), rather than a Trust creditor. Because Gordon is the managing member and 50 percent shareholder of each of the respective Brandman Domino Asset entities, the trial court concluded, "Domino is the umbrella organization controlling the entities that constitute the Brandman Domino Assets."[10] Moreover, the court concluded, section 17000, subdivision (b)(3) does not apply because the Petition is brought on behalf of a beneficiary against a third person, but (as determined above) it fails to state a claim against the trustees or the Domino parties, whom it alleges are aligned in this proceeding.

The court ruled that its equitable powers do not confer jurisdiction to hear Ms. Brandman's claims under *Estate of Traung* (1962) 207 Cal.App.2d 818, because Ms. Brandman does not seek a deviation from the terms of the Trust or modification of the trust instrument.

The court concluded that because there are no open probate proceedings related to this action, the claims would in any event be better suited to a civil action than a probate

---

[10] The tentative ruling acknowledges that the Petition alleges that it is the language of only "certain of" the governing agreements (not all of them), and "many" (but not all) of the agreements that permit the Domino parties to refuse to consent to transfer the Brandman Domino Assets.

court proceeding; or perhaps Ms. Brandman could bring a petition against the trustees for breach of trust, failure to account, or "something along those lines," but nothing requires the probate court to maintain jurisdiction over the matter.

Finally, in response to the petitioner's requests for leave to amend, the court responded that there had been ample time to amend the Petition to state claims against the trustees.

On November 6, 2013, Ms. Brandman filed this timely appeal from the September 9, 2013 order, dismissing the Petition with prejudice after granting judgment on the pleadings without leave to amend in favor of the Domino parties and the trustees.

### Discussion

The judgment is appealable under section 1300, subdivision (k), and Code of Civil Procedure section 904.1, subdivision (a)(1).

Petitioner argues that Brandman's estate plan intended and anticipated that the Trust would serve as only a temporary waypoint for his fortune, on its way to the Foundation for ultimate distribution to the charities it supports. For that reason, his testamentary plan contemplated no role for Gordon, his former business partner in Domino. But by their refusal to permit transfer of control over the Brandman Domino Asset entities to the Trust, the Domino parties—not the trustees or the Foundation directors—control the Foundation's ability to devote Brandman's residuary estate to the charitable purposes he intended.

Our review concerns whether the trial court erred in granting the motion for judgment on the pleadings, without leave to amend. We conclude (as did the trial court) that the Petition is in at least some respects deficient in its articulation of the intermediate determinations that could lead to achievement of the Petition's goals, and the factual grounds that might support each of those intermediate determinations. However—as the trial court's ruling also suggests—the petitioner's allegations, construed broadly, demonstrate a reasonable possibility that the Petition might be able to be amended to state viable claims within the authority of the probate court, by the Foundation against the

13

trustees for their failure to assert claims against Gordon and Domino on behalf of the Trust, seeking instructions to the trustees or removal of trustees and appointment of a trustee or trustees ad litem; and by the Trust or the trustees against the Domino parties seeking control by the Trust of the Brandman Domino Assets, for prompt distribution to the Foundation.  We conclude also that as a Foundation director, Ms. Brandman has standing to assert these claims.

We therefore reverse the order granting judgment on the pleadings with prejudice and without leave to amend, and we remand the matter with directions to grant leave to amend the Petition to plead these or related claims if the petitioner is able to do so. Whether the petitioner will be able to allege and establish the facts required to proceed and succeed with her claims, we cannot and do not decide.  We determine only that she should be permitted to make that attempt, should she choose to do so.

### A.  Standards Of Review.

A motion for judgment on the pleadings is analogous to a general demurrer, and the same rules apply.  (*Lance Camper Manufacturing Corp. v. Republic Indemnity Co. of Am.* (1996) 44 Cal.App.4th 194, 198.)  In determining whether the Petition states a claim for relief under the law, we accept the allegations of the Petition and its supplements as true and construe them liberally with a view toward attaining substantial justice, without deference to the trial court's factual inferences.  (*Ibid*.; *King v. Central Bank* (1977) 18 Cal.3d 840, 843.)

We evaluate the denial of leave to amend for abuse of discretion.  The standard is whether it is "reasonably possible" the complaint can be amended to cure the defect. (*Kirby v. Albert D. Seeno Construction Co.* (1992) 11 Cal.App.4th 1059, 1069.)  "[W]e give the complaint a reasonable interpretation, reading it as a whole and its parts in their context."  When a demurrer is sustained "without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment:  if it can be, the trial court has abused its discretion and we reverse . . . ."  (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318; *Virginia G. v. ABC Unified School Dist.* (1993) 15 Cal.App.4th 1848, 1852 [where motion is granted as to the original pleading, denial of leave to amend

constitutes an abuse of discretion unless the pleading shows on its face that it is incapable of amendment]; *Greenberg v. Equitable Life Assur. Society* (1973) 34 Cal.App.3d 994, 998 [denial of permission "'is now usually found to be an abuse of discretion, except where the impossibility of amendment to state a cause of action is clear'"].)

## B. Leave To Amend.

Following the court's recitation of its tentative ruling, Ms. Brandman argued primarily that if the Petition is deficient in the respects identified by the court, she should be given an opportunity to amend. Although three supplements to the Petition had been filed, there had been no demurrer, and no amended petition. The tentative ruling was the court's first ruling on the Petition's adequacy and the first notice of the court's position (rather than that of the probate department's staff attorney) on the issues argued by the motion.

The Domino parties did not expressly contend, and the trial court did not find, that no amendment of the Petition could cure the defects the tentative decision identified.[11]

The Domino parties argued that the court should stand by its tentative decision to deny leave to amend.[12] They argued—and the trial court agreed—that there had been ample opportunity for the petitioner to file curative amendments during the year since the Petition was filed, during which time the "probate notes" of the probate department staff attorney had given Ms. Brandman ample indications of the need to amend. As the court

---

[11] The trustees took no position on whether leave to amend should be granted.

[12] They also argued (as the tentative ruling hinted) that Ms. Brandman would still be able to petition the probate court for the trustees' removal, and any appointed trustees could then bring a civil action against the Domino parties for breach of the agreements governing their obligations to the Trust. We do not address the merits of the suggestion that such relief would be available if we were to affirm the court's dismissal of the Petition with prejudice.

15

put it, "I mean, the notes tipped off everybody what the court's feelings were about things."[13]  Ms. Brandman disputed these points.[14]

The notes of the probate staff attorneys are not part of the record in this court, and they are not before us in this appeal (nor, even if we were so inclined, could we evaluate the conflicting assessments of the notes' insights, if any).  The Domino parties do not explain or support their suggestion that the probate department staff-attorney notes necessarily reflect the trial court's views (or even that the court was ever aware of the contents of the notes of the department's probate attorneys).  Nor is there any showing (or any claim) that the probate-attorney notes contained any explanation at all of the amendments that might successfully overcome the pleading deficiencies that the notes apparently identified—as did the court later in its tentative ruling.[15]

The probate-attorney notes (in the local courts that provide them at all) are intended and designed to identify potential issues on which the court will be advised by its staff to require argument.  (See Ross & Cohen, Cal. Practice Guide: Probate (The Rutter Group 2014) ¶¶ 3:538-538.1, pp. 3-124.10 to 124.11.)  We are aware of no

---

[13] "I know we sort of, and I have -- you've guys [*sic*] have done this for quite a while, but I'm looking at it and saying, well, if you have an action against the trustees, why haven't you brought it?  I mean, why haven't you brought an action that would involve the probate court directly?"

[14] It is true that almost a year had passed since the Petition's filing in August 2012; but the petitioner contended (and the Domino parties did not dispute) that for about half of that year they had been ordered by the court to engage in informal mediation, to determine whether the Trust could settle with the Domino parties their dispute over control of the Brandman Domino Asset entities.  The petitioner also represented that during that period the trustees and the Domino parties had wholly excluded her from participation in the mediation discussions, and that the Domino parties had wholly failed to provide any of the requested discovery (which, at the Domino parties' request, the court had declined to stay).

[15] As the petitioners noted, the court's tentative ruling provided "helpful observations, none of which is in the probate notes," and the probate department staff-attorney notes "are not remotely a route [to correction of the identified deficiencies] that your Honor so clearly articulated this morning . . . ."

authority that probate department staff-attorney notes can be relied upon to provide notice of the court's thinking, or even of its tentative thinking, on any issue—much less of its tentative or actual ruling on any point at all. The trial court was not justified in relying on the notes of its staff attorney to fulfill that role.

The petitioners argued that they had not intended their supplements to constitute amendments to the Petition, and "this tentative was the first real explication . . . of the court's position . . . ." The supplements, and the request for leave to amend, came before any ruling by the court, "which is why we're asking for the right to amend." The record therefore contains nothing to show an obligation on the petitioner's part to abandon her positions on the Petition's sufficiency in advance of the trial court's first ruling, or that she should have understood the probate-attorney notes as notice of the court's intended ruling on the sufficiency of the Petition, or on the manner in which the Petition could or should be amended in order to overcome the Petition's identified deficiencies.

The question whether leave should be granted to amend the Petition should not turn on whether the pleading party might have been able to guess the court's thinking, before its first ruling on the issue. That is why leave to amend is routinely granted: the appropriate test for review of a denial of leave to amend is "whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse . . . ." (*Blank v. Kirwan*, *supra*, 39 Cal.3d at p. 318.)

Because it did not apply this test, the trial court abused its discretion by denying leave to amend the Petition.

### C. The Record Indicates A Reasonable Possibility That The Petition Could Be Amended To Provide The Probate Court With Authority To Hear Ms. Brandman's Allegations Against The Trustees Of The Trust And The Directors Of The Foundation.

Construed broadly, the Petition as supplemented could be amended to seek orders on behalf of the Foundation, as beneficiary of the Trust, instructing the trustees to pursue relief against the Domino parties, or removing a trustee or trustees for failure to pursue such relief; for an audit of the Trust's interests in the Brandman Domino Asset entities,

17

and for possession and control of those interests in order to enable their distribution to the Foundation in accordance with Brandman's estate plan. Construed broadly, it alleges that the trustees' failure to seek or to accomplish these goals results from the conflicts of interest of at least one the trustees, two of whom are also directors of the Foundation, resulting from their ongoing business relationships with Gordon and Domino, from the status of one of the trustees as the draftsman of Brandman's foundering estate plan, and from the trustees' own financial interests in prolonging the Trust's inability to complete its mission and wrap up its affairs, resulting in continuing compensation to them as trustees. The Petition seeks the court's intervention to accomplish those results.

The relief sought by the Petition is not necessarily beyond the probate court's jurisdiction. The superior court sitting in probate has exclusive authority over proceedings concerning the "internal affairs" of trusts (§ 17000, subd. (a)), and concurrent authority, with the superior court's civil division, over actions and proceedings involving trustees and third persons. (§ 17000, subd. (b)(3).) Thus it has the power to hear and determine adverse claims to trust property, either where the trustee claims property the title or possession of which is held by another, or where a third party claims property to which the trustee holds title or possession. (§§ 850, subd. (a)(3); 17000, subds. (a), (b); 17200, subd. (b).)[16] As to any matter that is properly before it, the probate court also has power to exercise the full jurisdiction of the superior court in order to completely dispose of the matter. (§ 17001 [probate court is court of general jurisdiction]; *Schwartz v. Labow* (2008) 164 Cal.App.4th 417, 426.)[17]

---

[16] See section 17200.1 ["All proceedings concerning the transfer of property of the trust shall be conducted pursuant to the provisions of Part 19 (commencing with Section 850) of Division 2"].)

[17] The jurisdiction provided by section 17000 "is not the sort of fundamental jurisdiction, i.e., implicating the competency or inherent authority of the court, the lack of which would render a judgment void." Rather, the question is only whether the matter is within the statutory power of the court's probate department, rather than its civil department. (*Harnedy v. Whitty* (2003) 110 Cal.App.4th 1333, 1344-1345.)

18

The "internal affairs" of a trust, over which section 17000 provides the court with exclusive jurisdiction, includes proceedings of the sorts listed in the subsections of subdivision (b) of section 17200, including, for example, construing a trust instrument (subd. (b)(1)); determining a duty or right (subd. (b)(2)); passing on acts of a trustee (subd. (b)(5)); instructing a trustee (subd. (b)(6)); compelling a trustee to account or to provide information (subd. (b)(7)); granting powers to a trustee (subd. (b)(8)); appointing or removing a trustee (subd. (b)(10)); and compelling redress for a breach of trust (subd. (b)(12)). Section 17000 provides that the probate department has concurrent jurisdiction over (among other things) "actions and proceedings involving trustees and third persons." (§ 17000, subd. (b)(3).)

Subdivisions (a)(3)(A) and (a)(3)(B) of section 850 provide that a "trustee or any interested person" may petition the probate court for relief, either when the trustee has possession or title to property, some interest in which is claimed by another, or when the trustee claims an interest in property, the possession or title to which is held by another.

A proceeding seeking either to compel the trustees of a trust to proceed against third parties for property to which the trust is entitled, or to remove trustees and to appoint a trustee or trustees ad litem to undertake such an action or proceeding, therefore is within the probate court's concurrent (and perhaps exclusive) jurisdiction. (§ 17200, subds. (a) & (b)(2), (b)(5), (b)(8), (b)(10); see § 16420 [possible remedies trust beneficiaries may obtain against trustee for breach of trust]; *Saks v. Damon Raike & Co.* (1992) 7 Cal.App.4th 419 [beneficiaries' proceeding to compel trustees to proceed against third parties, or to remove trustee and appoint trustee ad litem to sue third parties, would be within probate department's jurisdiction].)

In *Triplett v. Williams* (1969) 269 Cal.App.2d 135, 137-138, the court held that "where a trustee cannot or will not enforce a valid cause of action that the trustee ought to bring against a third person, a trust beneficiary may seek judicial compulsion against the trustee. In order to prevent loss of or prejudice to a claim, the beneficiary may bring an action in equity joining the third person and the trustee." (*Saks v. Damon Raike & Co.*, *supra*, 7 Cal.App.4th 419, 427-428; *Triplett v. Williams*, *supra*, 269 Cal.App.2d at pp.

137-138.)  Such an action is within the exclusive jurisdiction of the court's probate department, and must be filed there.  (*Triplett v. Williams*, *supra*, 269 Cal.App.2d at p. 138; *Saks v. Damon Raike & Co.*, *supra*, 7 Cal.App.4th at p. 428, fn. 6.)  And where the trust beneficiary can allege the trustees' breach of trust (for example breach of the duties of loyalty or to avoid conflicts of interest (§§ 16002, 16004)), the trust beneficiary may be able to proceed directly against third parties that participated with the trustees in the breach of trust.  (*Harnedy v. Whitty*, *supra*, 110 Cal.App.4th at pp. 1340-1341; *City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc.* (1998) 68 Cal.App.4th 445, 462-463.)

The Petition alleges that "[a]ll of Brandman's assets were distributed to the Trust during his lifetime," that the Trust's primary assets are the Brandman Domino Assets, but that Gordon's claims of authority over the trustees' right to transfer those assets (or at least some of them) have prevented the trustees from complying with their obligations under the Trusts to convey the Brandman Domino Assets to the Foundation.  The trustee's inability to persuade Gordon to permit transfer of the Brandman Domino Assets has had "the practical effect of giving Gordon an unauthorized and unintended right of first refusal over all of the Brandman Domino Assets," thereby "frustrat[ing] the purposes of the Trust" and causing waste and dissipation" of the Trust's resources, delaying and reducing Foundation's funding and the funding of the Foundation's charitable beneficiaries.

These allegations, if they were asserted by or on behalf of the trustees of the Trust, would undoubtedly sufficiently allege a matter within the terms of section 850, subdivision (a)(3).  Under them, broadly construed, the trustees may be said either to have title to property (the Brandman Domino Assets) in which the Domino parties claim an interest (i.e., the authority to prevent their transfer), or that Gordon and Domino possess a property interest to which the trustees have a claim.  (§ 850, subds. (a)(3)(A) &

20

(a)(3)(B); see subds. (a)(2)(C) & (a)(2)(D).) Either way, the claims would come within the probate court's jurisdiction.[18]

The Petition undoubtedly might have more clearly identified the facts showing that Ms. Brandman is within the statutory category of a "trustee or any interested person," with standing to bring an action to protect the Foundation's rights as the Trust's beneficiary. Nevertheless, the possibility that any pleading deficiency might be cured by amendment is apparent. A trustee of a charitable trust may sue a cotrustee to enjoin conduct violating the trust; and a charitable corporation (such as the Foundation) is governed by the same rules. (*Holt v. College of Osteopathic Physicians & Surgeons* (1964) 61 Cal.2d 750, 756-757; *American Center for Education, Inc. v. Cavnar* (1978) 80 Cal.App.3d 476, 485-486.) "Rules governing charitable trusts ordinarily apply to charitable corporations. [Citations.] There is no sound reason why minority directors or 'trustees' of a charitable corporation cannot maintain an action against majority trustees when minority trustees of a charitable trust are so empowered." (*Holt v. College of Osteopathic Physicians & Surgeons*, *supra*, 61 Cal.2d at p. 757.)

As a minority director of a charitable corporation, Ms. Brandman therefore is considered a trustee and an "interested person" with standing to bring an action under section 850, subdivisions (a)(3)(A) and (a)(3)(B), alleging conflicts of interest resulting in a breach of duties by the Foundation's majority directors in refusing to seek relief from the trustees for their failure to assert the Trust's rights against the Domino parties on behalf of its beneficiary (the Foundation) and seeking to remedy that breach by requiring actions on the Trust's behalf against the Domino parties. (*Holt v. College of Osteopathic Physicians & Surgeons*, *supra*, 61 Cal.2d at pp. 756-757; see Corp. Code, § 14623 [by

---

[18] For this reason we reject the court's stated justification for its disregard of the second Petition's supplement, finding that the allegation that the trustees have possession or title to the Brandman Domino Assets is in fatal conflict with the Petition's allegation that the trustees claim assets possessed by Gordon and Domino. These allegations might be construed to come within either subdivisions (a)(3)(A) or (a)(3)(B) of section 850; moreover, any factual conflict between them would be subject to clarification or explanation, had leave to amend been granted.

analogy to a minority cotrustee, director of benefit corporation has standing to bring action against corporation or its directors]; *American Center for Education, Inc. v. Cavnar*, *supra*, 80 Cal.App.3d at pp. 498-499.)

The trial court's ruling goes far toward affirming the possibility that the Petition might be amended to satisfy the deficiencies the court's ruling identifies. It explains that an action by the trustees for transfer of the Brandman Domino Assets to the Trust would relate to the contractual relationships that govern the companies and partnerships that constitute the Brandman Domino Assets (or at least "certain of them"), and therefore "is not related to the internal affairs of the Trust." But at the same time, the ruling suggests that an amended petition might state a claim cognizable in the probate court by alleging a proceeding by the Foundation seeking to force the trustees to undertake an action for transfer of the Brandman Domino Assets: In order to come within probate court jurisdiction, "it would appear that they should bring a petition against the co-trustees for something like breach of trust, failure to account or something along those lines . . . ."— adding that "any petition to remove the trustees would be here [in the probate court]." Thus, although an action by the trustees against the Domino parties for the Brandman Domino Assets (or control of them) would be outside the Trust's "internal affairs," an amended petition by the Foundation seeking to force the trustees to take such an action on behalf of the Trust's beneficiary would not.[19]

Once a matter is within the probate court's jurisdiction, the court has general jurisdiction over related claims that are not expressly authorized by the code. "In the exercise of its legal and equitable powers [citations], a superior court sitting in probate that has jurisdiction over one aspect of a claim to certain property can determine all aspects of the claim. A claimant is not required to sever and litigate a multifaceted claim in separate proceedings once all the necessary parties are before the court. (*Estate of*

---

[19] It is also possible that an amended petition might be able to allege grounds for claims that the Domino parties owe fiduciary or other duties to the Trust, which allegations might bring those claims, too, within the "internal affairs" of the trust relationship.

22

*Baglione* (1966) 65 Cal.2d 192, 196-197; *Estate of Bowles* (2008) 169 Cal.App.4th 684, 696 [probate court with jurisdiction over matter involving internal affairs of trust has concurrent jurisdiction over related civil action for redress against third persons].)

The thrust of the trial court's challenged ruling is that the Petition initiated a proceeding that involves a dispute between a trust beneficiary (the Foundation) and third persons (the Domino parties) with whom the trustees are aligned, while section 17000 requires a proceeding between a trust or its trustees and third persons. But an amended petition might supply the interstices, filling the gap between the Foundation and the Domino parties with allegations identifying the Foundation's rights against the Trust and its trustees, along with the trustees' duties to the Foundation and rights against the Domino parties. The Domino parties conceded in the trial court that an action against the trustees for distribution of Trust property would come within the probate court's jurisdiction under subdivision (a)(3)(B) of section 850, and under section 17200.[20]

The parties that are before the court include the Foundation and its directors, the Trust and its trustees, and the Domino parties—all the parties involved in claims for relief in favor of the Foundation against the trustees, and by the trustees against the Domino parties. As the petitioner argued in the trial court, if she cannot assert these claims, who will?

## Conclusion

Construed broadly, the Petition seeks—or might be amended to seek—an audit of the Brandman Domino Assets on the Trust's behalf, and their transfer by the Domino parties to the Trust for distribution to the Foundation in accordance with Brandman's estate plan. It alleges that the trustees' failure to act to accomplish these goals results

---

[20] Similarly, it might be possible for the petitioner to allege grounds for a modification, or termination, of the Trust due to the completion of all of its discretionary functions—all of its functions except only its ministerial distribution of funds and assets to the Foundation that it would receive from the Domino parties, thereby eliminating the substantial burden on the Brandman estate's assets resulting from the trustees' continuing fees. (*Estate of Traung*, *supra*, 207 Cal.App.2d at p. 829 [probate court has power to fashion appropriate equitable remedy, deviating from trust's express terms, in order to preserve settlor's primary objectives and dispositive plan].)

from conflicts of interest of the Trust's trustees, two of whom are also directors of the Foundation, resulting from their business relationships with Gordon and Domino, their personal financial interests in prolonging the life of the Trust, and the status of one of them as the draftsman of Brandman's estate plan. It alleges that Brandman's estate plan is foundering on the shoals of Gordon's and Domino's claims. And it seeks the court's intervention to accomplish the results intended by Brandman's estate plan. The Petition's claims are at least theoretically within the jurisdiction of the court to hear. The trial court abused its discretion by granting judgment on the pleadings without leave to amend the Petition. Reversal is required to correct that error.

## Disposition

The judgment is reversed and the cause is remanded to the superior court, with directions to vacate its orders granting the motion for judgment on the pleadings without leave to amend and dismissing the proceeding, and to enter a new order granting the petitioner leave to amend the Petition. Petitioner is entitled to her costs on appeal.

NOT TO BE PUBLISHED.


CHANEY, Acting P. J.


We concur:


JOHNSON, J.


BENDIX, J.[*]

---

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.